May it please the Court, Travis Twitchell on behalf of the Plaintiff and Appellant, Stuart Twitchell. Your Honor, Stuart Twitchell has done everything that was required under both his real estate commission agreement with Wendy Paris and under the laws of the State of Nevada to be entitled to recover his commission after the Paris Ranch was sold to the West family. The real estate commission agreement provided that Stuart Twitchell would actively pursue the sale of the ranch and that Paris would pay Twitchell a real estate commission of 10 percent of the gross sales price to any buyer that was prepared by Twitchell to be ready, willing and able to purchase the ranch and the contract had a test which was as evidenced by Paris accepting an offer. Sotomayor, well, go ahead. You know, I was looking at what the district court did here. And it looked like for the findings of fact, it was actually a recitation of the evidence. And then the findings of fact and conclusions of law are interwoven in the part of the opinion that's called conclusions of law. Is that not the case? As we read it and tried to understand it, it appeared to us that the findings of fact were to a large extent just a regurgitation of the trial record. As far as the conclusions of law go, though, we believe that what was going on there is the court was applying what had occurred at trial and the things that they stated in the findings of fact to the law, and based on that, they were coming to legal conclusions. You don't think anywhere in those conclusions of law there are actually ultimate findings of fact? Ultimate findings of fact? I think that to the extent that there are findings of fact in those conclusions of law, they really aren't any different from the findings of fact that are stated in the findings. But he did make ultimate findings of fact. He did. He made findings of fact. And he stated that they were his findings. He labeled the document and broke it down a little bit, but it's not the most artfully drafted set of findings of fact and conclusions of law that I've ever seen. But it's pretty clear that he made ultimate findings of fact. I agree, Your Honor. That's all he's required to do. I agree. I agree. And I believe that the Court stated that those are their findings of fact. No, I mean, if you take some of his ultimate findings that are here and we review for whether they're clearly erroneous, how do you, how do you proceed? Well, Your Honor, what our position is that, you know, if you want to take a look at it from a clearly erroneous standpoint, you can take those findings of fact and you actually, if I might step back, he has to apply the findings correctly to the law. And so our position is that he did not correctly apply the findings, after the findings were made, to the legal standards to come to the correct legal conclusions. Let me give you one. Okay. I'll just single out one so maybe you can address it. More concretely. So on page 19 of his findings of fact, I don't have the excerpt of record number. He, under subparagraph entitled, "'Twitchell did not prepare the West to be ready, willing, and able to purchase.'" Uh-huh. Within that paragraph, the Court said this. "'The evidence supports the fact that once the West told Twitchell, in or about November 2001, that they were only interested in leasing portions of the ranch for purposes of grazing sheep on a trial basis, Twitchell stopped all efforts to prepare them as ready, willing, and able purchasers.'" So how, with that finding, what are we supposed to do with that? If that's the finding, it's It would be a clearly erroneous finding if you actually looked at the findings you have to make to support the law. And under the law, Nevada has set out extensively how you determine if someone prepares or procures a sale. And what they say is that the person has to set in motion the chain of causation that leads the buyer and the seller to come to terms on the purchase. And what the exceptions to that, there are really only two exceptions. One is that if, and this is the burden, this burden is on the seller, not the broker, to prove either that the seller merely introduced and that his actions were mere trifling, which means that he didn't set in motion the chain of events. Well, later the judge does say, uses the word, that what he did was mere trifling. Right. But if you look at the direction that we received from the Nevada Supreme Court, they've given us examples of what's a mere introduction versus what is something more. And they did this in the Atwell case, which is cited extensively in our brief, and in there the Court contrasts what had happened in a previous case the Court had ruled on, which was Binder. And in Binder they said it was mere trifling because all the broker did was merely introduce the buyer to the seller. And what constituted this mere introduction was that the broker had never actually even spoken to the buyer. But then they contrast that to the Atwell case and they say in that case the broker spoke with both the buyer and the seller and imparted additional information about the property that was being sold. Here what Twitchell had done is he identified a buyer, then he went looking for the opportunity to sell a ranch to that buyer. He entered into a written listing agreement with Paris. He then contacted the buyer, brought the buyer to the ranch, spent two days personally showing the ranch, and then after that imparted additional information about the deeded acres and the grazing permits. So this is far beyond merely introducing the buyer to the seller. And it's clear under Nevada's causation laws that he had set in motion the chain of events that led to the sale. And, in fact, the Court actually finds in its legal conclusions that Twitchell did set that he established the first link in the chain of causation. But then it goes on and says because he did not personally negotiate the lease agreement or the purchase agreement, he cannot establish those links. But that's different from setting in motion the chain of events, the chain of causation that leads to the sale, and establishing those particular links. And, in fact, the law in Nevada is that it's inapplicable if he actually negotiates the terms of the sale. The question is that he set it in motion. And then if he set it in motion, the question then becomes, did he subsequently abandon his efforts to complete the sale? And here what had occurred is after he set this in motion, he contacted the West to solicit a purchase offer in February of 2002 only to find out that they had gone around him and negotiated it directly with his seller, and his seller hadn't contacted him. Then, following that, in order to make sure that he didn't abandon, he continued to follow up with her every two to three months while they were in the middle of a three-year trial period on the ranch before they had to submit an offer. So every two to three months he followed up to see if there was a – if he could insert himself into negotiations, he followed up to protect his commission. So it's clear he didn't abandon. Did he discuss with the West the lease option idea? Did he discuss it with the West? When they came out to investigate. What the records shows is that he contacted the West after they came out and investigated, told them that they were interested, or at least considering a lease. And that following that, he followed up with them subsequently to find out that they had actually – and found out that they had actually leased it without discussing it with him further. But did he offer to help them negotiate a lease? Did he offer to help the West? The West were represented by their own broker. Or did he say, well, I'll contact Ms. Parris and see if we can work out an arrangement? He actually did – he actually did contact Ms. Parris after he spoke with the West. And that's in the record that he told her they were possibly interested in leasing. However, the way that it works in a real estate seller arrangement is that the buyer has an agent and the seller has an agent. And that was the case here. And it is up to the buyer to determine whether or not they want to make an offer. And they make that offer through their own broker. And they do their own due diligence. And that's what the West were doing. They should have submitted the – they should have submitted the offer directly to Twitchell. In fact, there's ethical obligations on their broker to do that. But they didn't. They went around him. After they'd gone around him. Who was their broker? His name was Tom Gunn. I thought he was working for both. He was not. And in fact, the trial record shows both Wendy Parris and Tom Gunn testified at trial that he was not her broker. Did he earn a commission? Did Tom Gunn earn a commission? He was treated, really, as a consultant. He wasn't paid a commission by Wendy Parris. And what the West did is because they had already found a ranch, already entered into negotiations, they hired him on an hourly basis instead of a traditional real estate commission basis.  The lease for the sheet part of the ranch, if the option to purchase there had been exercised, then Mr. Twitchell would have been out anyway, because it was not the property. It was just part of the property, and it was a lease option. Correct? I mean, option to purchase is part of the lease. Are you asking me if they'd exercised the option, would he have not been entitled to his commission? According to you. I mean, Mr. Twitchell would have been out in that case, wouldn't he? No. No, he would not have, because he would have brought the buyer and the seller together, and they would have purchased. And, in fact, even if under his contract, if under the specific terms of his contract he was not entitled, would not have been entitled in that scenario to collect his commission, under Nevada's procuring cause doctrine, he still would have been entitled. Because what that doctrine is, is that if. . . Even their contract is to sell the ranch. You're saying if they had entered this lease, which he didn't have a contract that covered a lease, and it was for part of it that he would have been entitled to his commission? Just on the lease, or if they'd exercised the option. They'd exercised the option and bought the sheep part of the ranch. Yes. Under Nevada's procuring cause doctrine, it would be clear that he had brought them together, he had caused the sale to come about, and that he had done that in furtherance of his agreement with Paris to try to sell the ranch to the West. So although he may have sold something less than the entire ranch, which wasn't the case here, he did sell the entire ranch, but even if he had sold something less, he still would have been entitled to a commission on that sale. Your Honor, I see I have about three minutes left. Can I save that? Would you like to save the balance of your time for rebuttal? Thank you. Thank you. You know, under these kinds of contracts, you know, normally the agent gets the money, even though he didn't do too much other than bringing them together. I think that if you have a finding of fact of abandonment, you're in a different situation. Where's the finding of fact of abandonment? There's a large section on it. It actually spans several sections. Where does the district court say Mr. Twitchell abandoned? Let me get you an exact citation. Page 30 of Volume I of the Excerpts of Record, subparagraph 8 of the Conclusions of Law, which is in it. Is that the page of the? That's the Excerpts of Record page rather than the page number of the findings. Paragraph 8 of the findings of fact, it would have been page 29, paragraph number entitled Twitchell abandoned efforts and therefore is not entitled to a commission. Correct. The procuring cause of the sale. That's correct. The district court explains substantial factual findings that it made that supported its finding of abandonment. And Judge Rustani, your conclusion is exactly correct, that the abandonment finding in this case is significant because not only does it operate to preclude Mr. Twitchell from claiming a commission, it also operates to terminate the contract. As we cited to in our brief and as mentioned by the district court in its conclusions of law, the only consideration supporting this agreement is Mr. Twitchell's promise of efforts. When those efforts disappear, so too does the commission, and therefore finding the fact that there was a material breach in abandonment is justified. The conclusion of law that there is no further duties under the contract is justified. I think that's a well-settled proposition under not only Nevada law, but under every other case that we looked at relating to abandonment, that was the conclusion that we looked at. Well, there's the heading. Is this a finding of fact or a mixed finding of fact in law, which we review on a different standard other than clearly erroneous? I think this is a specific finding of fact, and the reason why I don't think that Mr. Twitchell has cited any proposition for the authority that because a conclusion is stated in a section of the document that's called conclusions of law, that it's necessarily a conclusion of law reviewed under a de novo standard. I think the clear, I think the weight of authority would suggest. I don't think he would argue that. I'm just asking you whether it's a mixed conclusion of fact in law or it's a conclusion of fact to be reviewed. It's clearly erroneous. It's a conclusion of fact, and the first point that I would make is how can the, what is the law regarding abandonment? I mean, I think the law regarding abandonment is where there's a factual finding of abandonment, the broker doesn't get commission. The factual, whether an abandonment occurs, as we've cited to in our briefs in a couple of cases in Nevada, the actual issue of abandonment is a determination that's made by the finder of fact. And in the broader context of the procuring cause doctrine, the procuring cause doctrine itself is a hugely factually intensive inquiry. To quote the, I believe the Atwell court, the fact that this is a factual question is very clear. If I can find the language here, the court's indulgence. Atwell. Okay. Kerrigan, the Kerrigan case. Whether a broker's efforts constitute the procuring cause of a sale is a question of fact. Not only that, but it's an ultimate factual issue that depends upon a close examination of the prevailing circumstances in each case, and the concept is not conducive to precise legal measurement. I think the procuring cause analysis, including the abandonment issue, is highly determinant on the district court's evaluation of the circumstances of each case, the credibility of the witnesses, and it's a specific factual finding. If there's going to be a legal error, the only legal error the court can make is, well, there's a finding of abandonment, but I'm not going to preclude a commission. I'm making a finding of procuring cause, but I'm not going to award a commission. I think those are underlying factual issues. And I think that there are several factual decisions that this court makes. There's factual findings that this court made that are either the district court made that are either omitted from the opening brief or the reply brief or specifically contradicted. I think the procuring cause and abandonment, those are the two issues. Those are pure factual issues. I think those are reviewed for a clear error standard. A couple of other issues. Judge Pais, you raised the page 19 where Twitchell stopped all efforts to the district court specifically found that Twitchell stopped all efforts to perform under the lease. That's a specific factual finding. In the opening brief, there are sections asserting otherwise. I just meant that as an example. I just drew that out of thin air. My only concern was what the district court had done with respect to its findings, ultimate findings of fact, which is what it's required to do under the rules. Right. Ultimate findings of fact on the material issues. Right. And that's exactly what it was. It was a finding of fact that Twitchell abandoned and that after 2001, Twitchell abandoned all efforts to contact the West and to procure a buyer. You know, it's abandonment. I'm not sure whether abandonment is a mixed question of fact and law or whether it's purely factual because if you go to page 30 of those findings where he leads up to abandonment, he says that, you know, Twitchell's inactivity is a classic. What does he say here? Is a prototypical example of a broker abandoning efforts after negotiations break down between seller and buyer. So is he saying that the inactivity leads to abandonment? I think he's saying the inactivity is the abandonment. I think the issue, the factual determination is one and the same. Inactivity is synonymous with abandonment the way that I read that. I think he's conflating the two issues. He says more. I mean, he starts out with that statement. Right. He goes on and says more. Right. And I think there are a lot of other factual reasons supporting that ultimate factual conclusion that there was an abandonment. I want to highlight a couple other. Can I ask you about these counterclaims? To me they sounded like defenses. You didn't ask for anything on your counterclaims, did you? We did ask. We did phrase them specifically as counterclaims and they were. What did you ask for in these counterclaims? What relief did you ask for? We asked for, it was, like all pleadings, I think we asked for every kind of relief that we could think of under the sun. We asked for monetary damages. We asked for equitable relief. And specifically, I think the important aspect of those counterclaims is that we did specifically ask for equitable relief. And one of the counterclaims that was specifically granted was our declaratory relief action. Nevada has a specific statute allowing for declaratory relief. You get declaratory relief when you, you know, it's kind of like preliminary to being able to get your legal cause, like an insurance case. You get everything declared because you have an actual controversy but you're not in a position to settle the damages. So you get a declaratory relief of everybody's obligation, whether they have to defend. But, I mean, declaratory relief when you're, when you've been sued on a contract and defended successfully against it, what is it? Explain it to me. In this case, it was the cause of action that the court used. It kind of funneled its finding of unconscionability through the declaratory relief action. So it was a substantial basis on which the, and the. To sustain your counterclaim, really, we would have to sustain the unconscionability finding. Is that true? Yeah. I mean, I think to affirm our, the granting of our counterclaims, I think that's one, that's one of the counterclaims that was granted. I think that. Well, I'm just asking you, what is there in your counterclaims that we need to look at? Because eventually down the road you're seeking attorney's fees, right, based on the counterclaims? You know, I'm not privy to all of the, I mean, that will be one of the theories that we're going to seek counterclaims for. But I think that the heart of the argument is that I think all of the, all of our counterclaims can be affirmed easily and unquestionably. I think that the argument that there was no damage, that there's no substance to these counterclaims ignores several important facts. Namely, the fact that Twitchell, Mr. Twitchell induced Ms. Parris to enter into this disagreement. He failed to comply with the required statutory disclosures, which obligated him to advise Ms. Parris. What is, what relief are you seeking on the basis that he failed to tell her that? Well, let me explain it. I'll start from the beginning. As I said, we sought for equitable relief, rescission of the contract, and legal relief. The court, under Nevada law, a court is authorized to either grant rescission of a contract or damages for breach of the contract. In this case, the court decided. Breach of the contract, damages, right? Well, no, I guess he didn't. What did he do here? No, he didn't. He didn't order, he ordered no legal damages. But in each case, in the findings of fact. He rescinded the contract? He rescinded the contract. In each case where he granted our cowering claims, he stated, accordingly, Parris is entitled to, was entitled to suspend performance of the contract. If he did not suspend performance of the contract, there would have been a potential liability. Of course, you can't award suspension of the contract and legal damages under Nevada law. Simply, it would have been legal error to award both monetary damages and rescission of the contract. And so that's the reason I think the district court didn't award monetary damages. Because of the, you know, it's finding of rescission or it's the relief of rescission being granted, there was no need to award monetary damages. So. So that's. As you read. Counterclaim for rescission is one of the counterclaims. Correct. The counterclaim which resulted in award of rescission. And then your other, the other counterclaim, the declaratory judgment ones relate to the unconscionability. Unconscionability. That's correct. If the discussion regarding our counterclaims begins on page 37, volume 1 of the exit record, under subparagraph F, the court granted the declaratory relief claim. That's the unconscionability factor. And what does that get you? A court in Nevada can't, when there's a finding of unconscionability, a court can't enforce a contract. Simply avoids enforcement of the contract. So this contract was unenforceable from the get-go. That's all kind of moot, though. Because if you, you know, you prevailed in front of the district court on your defense to the breach of contract. You established that he breached the contract. These, they're alternate. It seems like it's all kind of moot. It's not moot. They're alternate forms of relief. We requested. That's the point. They're alternate forms. And you received one form of relief, that issue 1, on his claim for breach of contract. So what's the purpose of the counterclaims? Now if you've won. I don't think it's correct to argue that we received relief by the district court denying Mr. Twitchell's breach of contract claim. He specifically denied Mr. Twitchell's breach of contract claim. And that's one finding. But as an independent basis to absolve Ms. Parris of liability, he also granted our unconscionability, our request for rescission of the contract. They're alternate. I think they're alternate bases. One of them he's denying. But you didn't need that. Having won on the initial contract, what's the purpose of the counterclaims? Well, I think we won in granting unconscionability. There was no enforceable contract. I think the fact that the court went on to analyze it, there was even assuming an enforceable contract, there was no breach of that contract. It's equitable relief when there is no adequate remedy at law, right? I'm sorry. I didn't hear the first part. It's equitable relief when there's no adequate remedy at law. Isn't that kind of form book law? You've got an adequate remedy at law. So what is all this other stuff? The equitable relief under Nevada law, a court is granted wide discretion to grant equitable relief. So if we're reviewing the court's decision to grant equitable relief. The court is granted relief as a matter of law. You're saying under Nevada law, this is state law in Nevada, you get equitable relief too. I don't think that it's correct to assert that denying Mr. Twitchell's counterclaim is granting relief as a matter of law. I think Mr. Twitchell's breach of contract claim and Wendy Parris's counterclaims are separate issues. The district court is deciding them on separate and independent bases. I think to some extent the remedy is the same. He's granted rescission. He's not enforcing the contract. But the logic of the district court's conclusion is that we could have prevailed on any one of those bases. Okay. That's all right. I'll save it for later. Okay. So as we've cited to in our briefs, if the damages issue is a significant issue, I urge you to read our briefs. The law is clear in Nevada. You can either grant, you can either receive legal relief or you can receive equitable relief. And on our counterclaims, you can't receive both. You can't rescind the contract and receive legal relief. It's legal error to award those simultaneous remedies. So the district court properly awarded equitable relief. And on these bases, my time is up. We request that the district court's findings of fact be affirmed. Thank you. Well, I'm not going to claim to be an expert on things Nevadan. Your Honors, just to clarify a couple of things. With regard to their counterclaims, they actually pled for damages on all of their claims except for the declaratory action claim. And they are limited to the relief that they pled for, and they can't plead for both. With regards to the abandonment, that really raises the question. They plead alternatively. Can't they plead alternatively? They did not plead alternatively. Well, you know, they're in Federal court, and I think it's under Rule 15. I forget what it is. The court can award whatever relief is deemed just and proper under the circumstances. Okay. Your Honor, I do want to address this abandonment issue just a little bit further. It really is a mixed question of law and fact. And if you look at the laws that's been stated over and over and over in Nevada. Well, now, you know, this is different from what you said in your brief or your letters or whatever. Everything was an issue of law. Now you're buying my question, and you're calling it a mixed issue of fact and law. Actually, if you look at our opening brief, we said that it was either a legal question or, if not a legal question, it was a question of mixed fact, a mixed question of fact and law. But if you look at the law, it says that where the broker does introduce the eventual purchaser, the burden switches to the seller to show that the broker subsequently abandoned efforts or that the broker's efforts were ineffectual. Where there was an agreement to pay a commission and the broker was the introducing party, he must also be given an opportunity to consummate the sale. And then under the Bartces case, it says that the seller, in order to relieve himself of liability, must notify the procuring broker of the later offering, give him a reasonable time to protect his commission, or the seller must decline the sale. So it gives him an out. He can decline the sale. But if we look at the district court's conclusions of law, in the excerpts of Record 1 ER 33, 12 through 14, it says, after all this abandonment stuff, it says, even if he abandoned, he did not adduce credible evidence that Parris cut him out of the deal or intervened to deprive him of his commission. That's wrong. The Court is required to check to see if Parris proved that he abandoned and that he wasn't cut out and gave him an opportunity to consummate the sale. What she said over and over again, she did not. Can I ask you a question about a law? Would it be wrong for the district court to consider the amount of the commission in deciding what is trifling or not trifling? I think we have two questions there. One is, did what he did amount to trifling or was it more than trifling? Well, you know, whatever it means. Trifling, I think, means within the context of the procuring cause doctrine, did he do no more than introduce the buyer to the seller? Here he did more. He did what a real estate agent does. He brought him and showed him the ranch. Is there any consideration of the amount of the commission that the district court can make? I see my time is up. Can I answer my question? Answer Justice Sotomayor's question, please. With regard to that, I believe the district court could have adjusted the commission. The evidence that was given at trial was that this 10 percent commission was a little bit higher than what Twitchell usually had. No, could the court decide that the intention of the parties was for a substantial degree of effort above the norm because of the amount of the commission? The court didn't find that. Okay. Is that something that cases don't allow? I don't know. We haven't really looked at that issue. But what did occur here is the agent did the work that a seller's agent typically does. It was all complete. All that remained to be done was negotiate the sale. And he wasn't given the opportunity to do that. Thank you, Your Honor. Thank you. Twitchell v. Paris is submitted. And that concludes our session for today. Thank you all very much. We appreciate your arguments. Thank you.
judges: Restani, Hug, Paez